## Case No. 5,202.

### In re GALLINGER.

[1 Sawy. 224; [1] 4 N. B. R. 729.]

District Court, D. California. July 18. 1870.

W. H. Rhodes, for petitioning creditor.
A. Rosenbaum, for alleged bankrupt.

HOFFMAN, District Judge. A petition having been filed against the above named party, praying that he be adjudged an in-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

voluntary bankrupt. the matter was referred to the register, to take proofs, and report the same. with his opinion, to the court. The report has accordingly been made, and the case now comes up on exceptions filed on behalf of the alleged bankrupt.

The facts, as disclosed by the proofs, seem sufficiently plain. Towards the end of the year 1868, Gallinger, who was a wholesale dealer in wines and liquors, in the town of Oroville, procured from various persons in this city, goods to the amount of $10,000. What representations he made as to his means of payment, does not appear; but he admits that he stated that he had $10,000 in notes due to him from Chinamen. He denies that he said they were good, but unless he meant it to be so understood, it is difficult to imagine his motive for making any statement on the subject.

Towards the end of December, he wrote to his creditors in this city that he was unable to meet his liabilities, and advised them to send to Oroville to collect what they could. His whole stock of goods remaining in his store at this time was worth only $4,000, including the furniture and fixtures. On the thirtieth or thirty-first of December. an attachment was levied, on behalf of Wurmser, one of his San Francisco creditors, on this stock. On the same day, at an earlier hour, an attachment had been levied on the same goods, for a small sum, at the suit of one Brock, a creditor in Oroville. At the solicitation of Brock, who admits that he was apprehensive that his lien might be defeated by proceedings in bankruptcy. he signed a paper which is not produced. but which authorized a judgment to be entered up against him at once and before the time for answering had expired or his default was due. The goods were subsequently sold under this judgment and that obtained by the San Francisco attaching creditor.

The only account given by Gallinger of the proceeds of the goods bought by him in San Francisco is, that he paid to one Kasel, $3,000; to Marks. about $1,000; to Raymond. about $1,750, and to other persons, from one to two hundred dollars. He also sold to Marks some book accounts, admitted to be good to the amount of $200. Both Kasel and Marks are brothers-in-law of the alleged bankrupt. He asserts that the debts due them were for money loaned. But these debts were not entered in his books. They were noted. as he says, in a memorandum book which he has lost. Nor is Marks able to produce the books in which the amounts loaned to Gallinger or paid by him are entered. The notes due from the Chinamen seem to be nearly worthless.

The respondent does not deny that he is now hopelessly insolvent. and he admits that his pecuniary condition has not altered since the time when he made the payments above referred to. and certain transfers or sales of real estate spoken of in his deposition.

The facts of the case thus seem to be that he has converted into cash the greater part of the goods obtained by purchase in this city, and applied the proceeds to the payment of certain alleged debts due to creditors in Oroville, who were to a considerable extent his relatives. That at the time he made these payments he knew himself to be insolvent, and that he intended to protect them at the expense of his other creditors is, I think, apparent.

As far as can be ascertained, the payments were made in the months of October, November and December, and up to the very time of the attachments. He could not have failed to know what was the probability of his obtaining the payment by the Chinamen of the notes held by him, and which with his stock of goods comprised nearly the whole of his available assets; and when he devoted the proceeds of so large a part of his stock of goods, for which he was indebted to the amount of $10,000, less only the sum of $50 which he had paid, to the payment of the debts said to be due to his relatives and friends, he must have been aware that he was giving those creditors a preference in direct violation of the bankrupt act [of 1867 (14 Stat. 517)].

The attachment by Wurmser he admits that he not only suffered, but procured—for it was levied at his suggestion and in consequence of letters advising his San Francisco creditors of the state of his affairs. But this information he did not see fit to give them until after he had paid some $6,000 to his preferred creditors in Oroville. He denies that the attachment by Brock was procured by him.

If the word "suffer," in the thirty-ninth section, has any meaning or operation beyond that of the word "procure," it is clear that the bankrupt in this case suffered his property to be taken by Brock on legal process. In re Black [Case No. 1,457]; In re Craft [Id. 3,316]; In re Sutherland [Id. 13,638]; In re Dibblee [Id. 3,884]; In re Schick [Id. 12,455]; In re Haugton [Id. 6,223]; In re Craft [Id. 3,317].

But at all events the confession of the judgment by the bankrupt, when he knew himself to be insolvent, and with the intent to enable Brock to secure his debt, by converting his lien by attachment into a lien by judgment, execution and levy, and thereby obtain a preference over other creditors, was clearly an act falling within the terms and spirit of the bankrupt law.

The sale of book accounts to Marks would seem also to be an act of bankruptcy. It was not done in the ordinary course of business, but, as he says, to obtain money to pay debts—and this at a time when he knew himself to be insolvent. The money obtained from Marks he must have applied to the payment of creditors, whose claims he preferred and satisfied, in clear violation of law.

The facts, as developed by the proofs, were evidently imperfectly known to the creditor, by whom the petition was filed. I think, however, that the second and third specifications are sustained. If necessary, the petition may be amended; for it is the duty of the court, when acts of bankruptcy are clearly established, and especially in a case like this, where something more than a mere technical violation of the law may be suspected, to allow such amendments and further allegations to be made as may be necessary to sustain the proceedings.

The exceptions to the report of the register are overruled. The petitioning creditor has leave to amend his petition, by alleging further acts of bankruptcy, and on his doing so, an order, adjudging the respondent an involuntary bankrupt, may be entered.